# IN THE SUPREME COURT OF IOWA

No. 20–0786

Submitted September 14, 2022—Filed November 18, 2022

**JAMES FARNSWORTH II,**

Appellee,

vs.

**STATE OF IOWA,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Christopher C. Foy, Judge.

Both the defendant and the State seek further review of a court of appeals decision in a postconviction-relief proceeding that declined to disturb the defendant's second-degree murder conviction but ordered the return of a previously-forfeited $50,000 cash bond. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

A decade ago, a melee between two young men resulted in the death of one of them. The defendant, who had pulled a knife and fatally stabbed the decedent, was charged with first-degree murder; he claimed self-defense. To obtain pretrial release, the defendant's family had to post a $200,000 cash bond, with $50,000 subject to the condition that it would be forfeited for restitution purposes if the defendant were convicted. Following a jury trial, the defendant was found guilty of the lesser included offense of second-degree murder. The $50,000 was forfeited to pay victim restitution.

The defendant applied for postconviction relief, raising several claims of ineffective assistance of counsel. The district court denied the application. The court of appeals affirmed on the issues relating to the defendant's conviction but reversed as to the bond forfeiture order. It found that the defendant's counsel had been ineffective in failing to challenge what it viewed as an unlawful bond forfeiture order. The court of appeals remanded for return of the $50,000 to the defendant.

We granted both parties' applications for further review. In our discretion, we let the court of appeals decision stand as the final appellate decision on all issues relating to the defendant's conviction. We reverse the court of appeals decision on the bond forfeiture issue. While we do not approve of the forfeiture order that was entered in this case, we hold that postconviction relief is not a way to overturn that order. Generally, bond forfeiture orders are civil matters

separate from the actual criminal proceeding. And to the extent that the forfeiture order here could be deemed part of the defendant's sentence, it nonetheless "relat[es] to restitution" and thus cannot be the basis for postconviction relief. *See* Iowa Code § 822.2(1)(*g*) (2015).

**II. Facts and Procedural History.**

In 2014, the court of appeals affirmed James Farnsworth's second-degree murder conviction, summarizing the relevant facts as follows:

> Several witnesses to the details of this incident testified, each relating slightly different facts depending on their proximity to certain actions. None, however, contradicted another. Based on this testimony, the jury could have found the following facts. On April 13, 2012, Farnsworth, his girlfriend, Victoria Miller, and several others were at the apartment of Echo Dority. The group then decided to go to a local bar. At the bar, Miller received a text of a smiley face from her ex-boyfriend, Ian Decker, who is also the father of her child. Farnsworth and Miller argued, and Farnsworth slapped Miller. Miller then told Farnsworth she was "done with him" and that he should leave. With the encouragement of others in the group, Farnsworth left.

> Not long after that, the group decided to go back to Dority's apartment. Farnsworth was waiting around the corner from the bar. Miller ignored Farnsworth and others told him to leave. Undeterred, Farnsworth followed the group, which continued to largely ignore his presence. When Farnsworth approached Miller, Dority kicked Farnsworth in the crotch, causing him to fall to the ground. Farnsworth got up and ran to Dority's apartment, arriving ahead of the group.

> Dority did not allow Farnsworth to enter her apartment. In an effort to talk with Miller, Farnsworth sent her numerous text messages. Miller replied, telling him to leave and that "[e]veryone wants to beat the f * * * out of you." Farnsworth threatened to kill himself and walked away from the door and out of sight of those in the apartment.

> Dority and Miller went outside the apartment to wait for Decker, whom Dority had invited. After Decker's arrival, Farnsworth came from around the corner and made a request to speak with

Miller, which she refused. Miller and Decker told Farnsworth to leave, so he got in his car and drove quickly away. However, a few minutes later, Farnsworth "came barreling back down the street" as other guests, Alyssa Fullerton and Derek Wentworth, were leaving the apartment. Miller and Wentworth told Farnsworth to leave. Farnsworth approached Miller, and Wentworth stepped between the two. After Miller informed Farnsworth she did not want to speak with him, Farnsworth stated: "If Ian [Decker] tries anything, I'm going to f * * * * * * stab him."

Decker was standing around the corner of the apartment building. Upon hearing Miller and Farnsworth arguing, Decker appeared to be very angry. He walked around the corner and began fighting with Farnsworth. It was not disputed that Decker threw the first punch. Miller tried to warn Decker by yelling, "[S]top, [Decker], he has a knife." The two continued fighting and grappled on the ground but both got back up. At one point, Decker was hunched over Farnsworth, but Farnsworth was able to throw Decker off of him. When Decker stood up, he lifted his shirt to reveal blood streaming down his chest and onto the sidewalk. Decker collapsed; Miller and Dority applied pressure to his chest wound. Farnsworth stood there briefly, then got in his car and sped away. It was later revealed Decker had been stabbed once in the ribs, once in the thigh, and had a cutting wound on his left forearm. Although police and paramedics quickly arrived, Decker died at the scene from the stab wound in his side, which had pierced his heart.

Police stopped Farnsworth shortly after he drove away. Farnsworth was cooperative and informed police the knife was in his center console. When asked what happened, Farnsworth replied Decker had punched him four or five times, prompting Farnsworth to pull the knife from his pocket and "[fling] it around." Although Farnsworth had some visible injuries, he refused medical treatment and was transported to the police station. Farnsworth later complained about being dizzy, and was then taken to the hospital. A neurological exam revealed the absence of a head injury, and though the doctor thought perhaps Farnsworth's nose was broken, Farnsworth refused to have X-rays taken and declined further treatment.

State v. Farnsworth, 2014 WL 2884732, at *1–2 (Iowa Ct. App. June 25, 2014)

(alterations in original) (footnote omitted).

Soon after the above-described events, Farnsworth was arrested by the Mason City police and charged with first-degree murder. He was initially held in jail on a $100,000 cash bond. Farnsworth applied for bond review, and a hearing took place. After that, the bond was increased to $200,000 cash, but with the proviso that $150,000 of the cash could be posted by a surety while $50,000 had to be deposited in the defendant's name. This requirement was intended to allow the $50,000 to be applied immediately to restitution if the defendant were convicted.

A month later, Farnsworth again sought bond review. He asked for permission to post a surety bond instead of cash for the $150,000 that did not have to be in his name. The State countered that Farnsworth should be required to post an increased sum of $100,000 in cash bond under his own name. The district court adopted neither suggestion and left the existing bail conditions in place.

To meet those conditions, a $50,000 cash bond was posted in the defendant's name, while a bail bonding company posted the remaining $150,000. The record indicates that the $50,000 came from Farnsworth's family. When the $50,000 was deposited, Farnsworth was required to agree as follows:

> I authorize the Clerk of Court to use this bail bond to pay all fines, surcharges, costs and victim restitution that I may be ordered to pay by the District Court in the final judgment of this matter or any other criminal judgment against me in Cerro Gordo County.

Farnsworth was released pending trial.

Trial began in the Cerro Gordo County Courthouse on January 14, 2013. Farnsworth primarily relied on a defense of justification. Three days later, the

jury returned a verdict finding Farnsworth guilty of the lesser included offense of second-degree murder. *See* Iowa Code § 707.3 (2012).

At Farnsworth's March 8 sentencing hearing, the district court imposed a sentence on the second-degree murder conviction of fifty years' incarceration with a mandatory minimum of 70%. *See id.*; *id.* § 902.12(1). The court added, "I'll enter an order separate from the sentencing order in regard to bond disposition." It continued, "Pursuant to Mr. Farnsworth's bond receipt agreement, I intend to forfeit the sums posted in his name for application toward victim restitution." The court further indicated that the parties would have ten days to object to this procedure.

The court's formal sentencing order, entered that day, directed Farnsworth to pay $150,000 in pecuniary damages to Decker's heirs at law pursuant to Iowa Code section 910.3B and $14,972 to the crime victim compensation program. It did not address Farnsworth's bond payments.

Twelve days later, on March 20, the court entered an order as to the bond. The order exonerated the $150,000 in cash bond posted by the bonding company while stating that the court "intend[ed] to forfeit" the $50,000 in cash bond posted in Farnsworth's name "for application toward victim restitution." The clerk was directed to hold the latter funds in trust "until further order of the court, which will enter upon the opening [of] a probate estate of Ian Decker, the appointment of a conservator for the minor heir of Ian Decker, or the establishment of a trust for the benefit of the minor heir of Ian Decker." The court's order added, "In the absence of a written objection by either party, the

court will enter [an order forfeiting the $50,000 cash bond] on or after April 2, 2013."

On April 4, noting the absence of any objection, the court ordered the forfeiture of the $50,000. It directed that the funds be held in trust by the clerk until further order of the court. Three months later, after being notified that a trust had been formed for Decker's minor heir with Miller as trustee, the court ordered that the $50,000 be released to her as trustee.

Meanwhile, Farnsworth had appealed on March 14. That appeal was transferred to the court of appeals, which affirmed Farnsworth's conviction and sentence in 2014. Specifically, the court of appeals rejected arguments that the prosecutor had engaged in misconduct, that a *Miranda* violation had occurred when an officer who apprehended Farnsworth was asked whether Farnsworth had made statements that would support a defense of justification, and that a prospective juror had been wrongfully stricken for cause at the State's request.

In 2015, Farnsworth filed the present application for postconviction relief. He raised a number of ineffective-assistance claims relating to Farnsworth's retained trial counsel, David Roth. It turned out that Roth had been engaged in very significant financial improprieties at the time he was representing Farnsworth. Roth took his own life in the fall of 2014 as the details of those improprieties emerged.

Farnsworth's ineffective-assistance claims included an allegation of conflict of interest because Roth and his firm had represented Mason City and some of its police officers. Farnsworth also alleged that Roth should have

retained a forensic pathologist who could have countered—or at least added context to—the state medical examiner's testimony that the fatal stab wound had been inflicted in a "slightly downward" direction. In addition, Farnsworth faulted Roth for not objecting to an instruction that allowed the jury to reject his justification defense by finding that Farnsworth had started or continued the incident which resulted in Decker's death. In Farnsworth's view, there was no evidence that he had started or continued the incident. Farnsworth also claimed ineffective assistance based on Roth's failure to mention the "beyond a reasonable doubt" burden of proof during closing argument. Farnsworth went on to allege several other pretrial and trial errors, including a failure to assure that witnesses were sequestered, a failure to convey a plea offer from the State to Farnsworth, and an allegation of cumulative error.[1] Finally, Farnsworth claimed Roth had been ineffective in seeking review of the initial $100,000 cash bond, which review resulted in a higher cash bond, and in not objecting to the forfeiture of the $50,000 that had been posted in Farnsworth's name.

The district court conducted a trial on Farnsworth's postconviction-relief application in 2019 and entered a ruling denying it several months later in 2020. The district court's ruling noted there was "nothing in the record . . . to show that Roth or his law firm ever represented any of the police officers whom the State called as trial witnesses against Farnsworth." It pointed out that Farnsworth's forensic pathologist expert for the postconviction-relief proceeding

---

[1]The plea offer was for second-degree murder, the offense of which Farnsworth was convicted. Farnsworth testified at the postconviction-relief trial that he would have rejected such a plea offer.

did not criticize the State medical examiner's conclusions and "does not appear to shed much light on the relative positions of the combatants"; at most, Farnsworth's postconviction-relief expert took issue with statements made by the prosecutor during closing argument. The court also found sufficient evidence that Farnsworth had started or continued the incident resulting in the fatal stabbing. Concerning Roth's failure to mention the burden of proof during closing argument, the district court agreed this was "unusual" but did not find that it breached an essential duty. And the court rejected the various other claims of pretrial and trial error.

Lastly, on the bond issue, the court found no breach of duty in the decision to seek review of the initial $100,000 all-cash bond. Regarding the subsequent bond forfeiture, the court noted that we did not decide *State v. Letscher*, 888 N.W.2d 880 (Iowa 2016), until 2016. It was then we held that district courts lack authority to forfeit bail as a term of sentencing. *Id.* at 886–87. The district court thus declined to find that Roth "breached an essential duty in his representation of Farnsworth by failing to assert a position that had yet to be validated by any appellate court in Iowa." The district court also observed that the "issue of bond is completely separate from and has no bearing on the trial or the verdict returned by the jury."

Farnsworth filed a motion to reconsider, amend, and enlarge findings, which the district court overruled.

Farnsworth appealed, and we transferred the case to the court of appeals. On November 3, 2021, the court of appeals affirmed the district court on all issues but the bond issue. As to the bond, the court concluded as follows:

> We need not address whether counsel breached an essential duty in seeking bond review. The operative omission with respect to the bond was counsel's failure to object to the court's application of the cash portion to Farnsworth's restitution obligation. *See State v. Letscher*, 888 N.W.2d 880, 885, 887 (Iowa 2016) ("No statutory sentencing provision exists in Iowa to authorize a court to forfeit bail. . . . The disposition of pretrial bail money is not an authorized part of sentencing, and therefore, a sentencing court is without statutory authority to forfeit bail as a part of a sentence. Action taken against bail must comply with the statutory terms and conditions."). Although the State correctly notes *Letscher* postdated Farnsworth's posting of his bond and counsel had no duty "to foresee that result," counsel did not require *Letscher* to argue that no statutory authority supported the forfeiture of the cash bond for restitution. Indeed, statutory authority in effect at the time said precisely the opposite:
>
>> Upon the filing of the undertaking and the certificate of the officer, or the certificate of the officer alone if money has been deposited instead of bail, *the court or clerk shall immediately order return of the money deposited to the person who deposited the same*, or order an exoneration of the surety.
>
> Iowa Code § 811.8(2) (2015) (emphasis added). We conclude counsel had a duty to object to the district court's expressed intent to apply the cash bond amount to his outstanding restitution obligation. We further conclude Farnsworth was prejudiced by the omission, to the tune of $50,000. We "return the case to the district court for the clerk to disburse the bail money as required by law." *Letscher*, 888 N.W.2d at 886.

(Omission in original.) At the conclusion of its opinion, the court of appeals remanded for "return of that sum [(i.e., $50,000)] to Farnsworth."

Both parties sought further review. We granted the applications and directed supplemental briefing "addressing both the appellant's ability to

challenge in a postconviction-relief action the district court's forfeiture of his appearance bond in this case and the court of appeals' order to remand for the clerk of court 'to disburse the bail money as required by law.' "

### III. Scope and Standard of Review.

"When we grant further review, we may exercise our discretion to let the court of appeals decision stand as the final decision on particular issues." *State v. Fogg*, 936 N.W.2d 664, 667 n.1 (Iowa 2019). Here, while respecting the vigorous advocacy of Farnsworth's present counsel, we elect to let the court of appeals decision stand as the final decision on all issues but the bond forfeiture. The bond forfeiture question is a matter of statutory interpretation. We review the district court's interpretation for correction of errors at law. *Sahinovic v. State*, 940 N.W.2d 357, 359 (Iowa 2020).

### IV. Analysis.

The State does not claim that the forfeiture of the $50,000 cash bond posted in Farnsworth's name was proper. In other words, the State does not argue that it was lawful to condition Farnsworth's pretrial release on his posting of bail money that could be redirected to pay fines, costs, and restitution if Farnsworth were convicted. Nor does the State try to defend the actual order forfeiting Farnsworth's cash bond in order to pay restitution.

Our 2016 decision in *Letscher* is relevant here. 888 N.W.2d 880. There, we reversed a sentencing order that required a convicted defendant to forfeit a $2,000 cash appearance bond so it could be used to cover financial obligations arising out of the defendant's conviction. *Id.* at 887. We explained that bail exists

to assure the defendant's appearance and protect public safety, not to secure payment of financial obligations that might be imposed later if the defendant were convicted. *Id.* at 884–87; *see also* Iowa Code § 811.1(3). As we stated, "Under our law today, conditions on bail are only imposed to assure the subsequent appearance of the defendant or protect the safety of others." *Letscher*, 888 N.W.2d at 886. And "the statutes governing a forfeiture of bail do not authorize forfeiture as a term of sentencing." *Id.* at 884.

We also took note of the state's argument that the defendant had agreed his bond could be forfeited to pay any financial obligations. *Id.* at 886 ("[T]he State argues that the authority of the district court to order forfeiture at sentencing was derived from the consensual nature of the terms of bail in this case."). Yet we concluded that "any issue of consent is not properly before us in this appeal." *Id.* "No record exists to reveal the circumstances behind the bond form signed by Letscher," we said. *Id.* We left open the possibility that the clerk of court could seek to forfeit the bond based on the defendant's written agreement, subject to the defendant's "opportunity to challenge the action in a separate district court proceeding" with judicial review by writ of certiorari. *Id.*

In lieu of arguing that the forfeiture of the $50,000 cash bond was lawful, the State raises several other grounds why the district court properly denied postconviction relief in this area. First, the State contends that Farnsworth cannot use postconviction relief to challenge the bond forfeiture because the forfeiture was not a part of his sentence and was civil in nature. Second, the State alleges that Farnsworth had no constitutional right to effective assistance

of counsel with respect to the bond forfeiture. Third, the State maintains that reasonably competent counsel did not have a duty to challenge bond forfeiture for payment of restitution until *Letscher* was decided. Lastly, the State argues that it would be inequitable and unjust to try to recoup the money at this point from the victim's child and heir.

We will begin with the State's first argument. Iowa Code section 822.2(1)(*a*) (2015) authorizes a defendant to file an application for postconviction relief when "[t]he conviction or sentence was in violation of the Constitution of the United States or the Constitution or laws of this state." Clearly, Farnsworth's present attack on the bond forfeiture isn't an attack on his conviction, so to be eligible for postconviction relief Farnsworth must be attacking his sentence. Was the district court's April 4, 2013 "order for disposition of bond" part of Farnsworth's "sentence"? That order directed that the cash bond posted by Farnsworth be forfeited and applied toward victim restitution. Thus, it could potentially be viewed as a *bond* order or as a *restitution* order, or as something of both.

The State insists that bond forfeiture orders are civil in nature and not a proper subject of a postconviction-relief application. It directs us to *State v. Dodd*, where the court of appeals said, "Proceedings for forfeiture of bail and judgment thereon are civil in nature." 346 N.W.2d 42, 43 (Iowa Ct. App. 1984). There are several precedents saying the same thing. *See, e.g., State v. Costello*, 489 N.W.2d 735, 737–38 (Iowa 1992) ("[P]roceedings for forfeiture of bail and judgment therein are civil actions . . . ." (quoting *State v. Zylstra*, 263 N.W.2d 529, 531 (Iowa 1978))); *State v. Marrufo-Gonzalez,* 806 N.W.2d 475, 480 (Iowa

Ct. App. 2011) ("The proceedings for forfeiture of bail and judgment are civil actions . . . .").

Clearly, the April 4, 2013 order has some characteristics of a classic bond forfeiture order. At sentencing, the district court stated that it would enter a "separate" order in regard to bond disposition. In that separate order, the court made an effort to comply with the ten-day notice provision of Iowa Code section 811.6(1) (2012) relating to forfeiture of bonds.

Yet this case does not involve a standard bond forfeiture for failure to appear. *Cf. Costello*, 489 N.W.2d at 737; *Marrufo-Gonzalez*, 806 N.W.2d at 477–78; *Dodd*, 346 N.W.2d at 43. Here, the forfeiture order was based on the defendant's *conviction*, following the court's announcement at sentencing that it planned to enter such an order. And the order did not merely take away the bond money, it also directed that the bond be applied to Farnsworth's restitution obligation to the victim's heirs. Farnsworth argues that we treated a similar order as a term of sentence in *Letscher* and that the present situation is analogous. *See* 888 N.W.2d at 884 ("We now consider the authority of the district court to order the forfeiture of a pretrial appearance bond as a term of a sentence.").

We have said that "the meaning of 'sentence' depends on the context." *State v. Richardson*, 890 N.W.2d 609, 617–18 (Iowa 2017). "[D]epending on the context, restitution could be considered part of the 'sentence.'" *Id.* at 617. Notably, the type of victim restitution that was awarded to Decker's heirs under section 910.3B has previously been determined by our court to be "partly punitive." *Id.*; *see also State v. Davison*, 973 N.W.2d 276, 285 (Iowa 2022).

Section 910.2(1) provides that restitution is ordered by "the sentencing court." Iowa Code § 910.2(1). Also, we have "acknowledged that restitution is a phase of sentencing." *State v. Alspach*, 554 N.W.2d 882, 883 (Iowa 1996). We have indicated that "a restitution hearing is a critical stage of the criminal proceedings requiring assistance of counsel" when the restitution is imposed "as part of the original sentencing order" or in a "supplemental order[]." *Id.* at 883–84. Farnsworth points out that in *Letscher* the bond forfeiture order was set forth as a paragraph of the judgment and sentence, whereas here a separate order was entered less than a month later. Not a material difference, in his view.[2]

In the end, though, we don't believe it matters how the district court's bond forfeiture order is characterized. If we view the April 4 order as a stand-alone bond forfeiture order, it is clearly a civil matter—*Letscher* confirms this. *See* 888 N.W.2d at 886. We explained in *Letscher* that forfeiture is available to the state "only as a civil matter." *Id.* We allowed for the possibility that, on remand, the state could try to pursue forfeiture based on the defendant's written agreement that his bond could be used to pay the financial obligations of the sentence. *Id.*

---

[2]Moreover, Farnsworth's March 8, 2013 written judgment and sentence had form language stating,

> The appearance bond of the Defendant, if any, shall be first applied to the payment of costs, then to the payment of the fine, then to the payment of any other outstanding restitution, fines, and costs owing in this matter, and the balance, if any refunded to the Defendant.

This boilerplate did not reflect the correct priority of payment. Payments to victims were—and still are—prioritized ahead of other payments. *See* Iowa Code § 910.9 (2012); *id.* § 910.9(3) (2022). As noted, follow-on orders were entered on March 20 and April 4 providing that only the $50,000 cash bond in the name of Farnsworth would be forfeited and that the proceeds would go to Decker's minor heir.

In that case, though, we said that the defendant's avenue for challenging such action would be by writ of certiorari, and we cited to the Iowa Rules of Civil Procedure. *Id.* In other words, we reiterated that a stand-alone bond forfeiture proceeding, even one based on the defendant's consent rather than his failure to appear, was a civil matter. *Id.* As a civil matter, the bond forfeiture order would not be a proper subject for postconviction relief.

On the other hand, if the forfeiture order is considered a term of sentence, then Farnsworth runs smack into Iowa Code section 822.2(1)(*g*) (2015), which precludes any use of the postconviction-relief remedy to attack a sentence for "alleged error relating to restitution." *See Earnest v. State*, 508 N.W.2d 630, 633 (Iowa 1993) ("[T]his subsection unambiguously excludes claims relating to restitution in postconviction proceedings."). To the extent that the April 4, 2013 order was a term of Farnsworth's sentence, it was a term relating to restitution. The April 4 order specifically provided that Farnsworth's $50,000 cash bond would be used for victim restitution.

The problem with Farnsworth's *Letscher* analogy is that *Letscher* was a direct appeal. This case is a postconviction-relief action. Thus, even if we treat the April 4, 2013 order as a term of Farnsworth's sentence, we have to ask whether it is a term that Farnsworth can challenge under Iowa Code chapter 822. And some sentencing terms can't be challenged. In particular, restitution terms can't be challenged in postconviction-relief proceedings. *See* Iowa Code § 822.2(1)(*g*) (excluding "restitution, court costs, or fees").

So, we sum up as follows: *If* the forfeiture order is a term of Farnsworth's sentence, it is a term of his sentence because it relates to restitution. And in that event, postconviction relief is not available. *See id.*

In his supplemental brief, Farnsworth argues that the State waived its present position that postconviction relief is unavailable to challenge the bond forfeiture order by not raising that claim in its principal brief. As Farnsworth puts it:

> The State never argued that there was no ability in a postconviction [proceeding] to raise this issue. The State did not even argue that the forfeiture provision was not part of sentencing.
>
> Given the State's original brief on appeal, the Court should find that the State cannot now raise those issues. The State should not be able to raise these arguments for the first time in its Application for Further Review.

We believe that we can exercise our discretion to consider the issue. The State made a minimalist argument below that postconviction relief was not an available remedy, asserting, "If Farnsworth believes he should have bond money back, he should file a civil malpractice suit, not raise this issue in post-conviction relief." The State is the appellee. Furthermore, the issue is a legal one, and the supplemental briefs have afforded both sides a full opportunity to make a thorough adversarial presentation. *See, e.g., Iowa Ass'n of Bus. & Indus. v. City of Waterloo*, 961 N.W.2d 465, 476 (Iowa 2021) (affirming in part based on an argument that was raised in an amicus brief); *King v. State*, 818 N.W.2d 1, 12, 35–36 (Iowa 2012) (affirming based on an argument that was raised below but not in the appellee's brief and noting that "[o]ur rules provide that an appellee need not even file a brief in our court").

Thus, we conclude that postconviction relief is not available to set aside the April 4, 2013 order directing that Farnsworth's cash bond be forfeited for victim restitution. At the time, other remedies may have been available—direct appeal, review by certiorari, or a petition under Iowa Code chapter 910.7 (2012). We do not decide which of those remedies Farnsworth could have pursued at the time. But clearly postconviction relief is not available today. In light of this conclusion, we need not reach the State's second through fourth arguments, but we note that the State's final argument provides some policy support for the conclusion we are reaching today. It would be unworkable if defendants could challenge orders forfeiting their bail for victim restitution purposes years after the fact. The money is gone. It has long since been paid by the State to victims and used by the victims to pay bills and for other purposes.[3]

**V. Conclusion.**

For the foregoing reasons, we affirm the order of the district court denying Farnsworth's application for postconviction relief and affirm the decision of the court of appeals except as to the bond forfeiture issue. On that point, we vacate the decision of the court of appeals for the reasons stated herein.

---

[3]Farnsworth also argues that Roth rendered ineffective assistance when he sought review of the initial $100,000 cash bond. This review resulted in the bond being increased to $200,000 cash, with $50,000 required to be posted in the defendant's name.

The original April 14, 2012 bond order required $100,000 "cash only in defendant's name only." Following the review hearing, the bond was increased on April 27 to $200,000 cash but only $50,000 of that had to be in Farnsworth's name. At this point, Farnsworth's family paid $20,000 to a bonding company for a $150,000 cash bond and also deposited $50,000 in Farnsworth's name. Thus, we agree with the district court that even with hindsight, the effort to seek review of the bond was a reasonable strategic decision that actually reduced the family's out-of-pocket outlay from $100,000 to $70,000.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except May, J., who takes no part.